**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**TIJUANA TUGGERSON-BROWN,**

**Plaintiff,**

**v.** **Case No: 5:12-CV-381-Oc-18PRL**

**COMMISSIONER OF SOCIAL SECURITY**

**Defendant.**

---

**REPORT AND RECOMMENDATION[1]**

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a Period of Disability and Disability Insurance Benefits ("DIB"). The Court has reviewed the record, memoranda, and applicable law. For the reasons set forth herein, the Commissioner's decision should be **AFFIRMED**.

**I. Procedural History and Summary of the ALJ's Decision**

On October 5, 2007, Plaintiff filed an application for DIB, alleging a disability onset date of August 26, 2007. (Tr. 103-110). Plaintiff's application was denied initially and upon reconsideration. (Tr. 62-64, 70-71). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on January 29, 2010, during which Plaintiff testified and was represented by counsel. (Tr. 26-44). On March 3, 2010, the ALJ issued his decision, and found that Plaintiff was not disabled and denied her claim. (Tr. 12-21). After the Appeals Council denied review (Tr. 1-3), on March 30, 2011, Plaintiff filed a Complaint in this Court. *See*

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

*Tuggerson-Brown v. Astrue*, No. 5:11-cv-00168-MAP. On July 15, 2011, the Court granted the Commissioner's unopposed motion to remand this matter. Subsequently, on January 27, 2012, a second hearing was held, during which Plaintiff and a vocational expert ("VE") testified. (Tr. 387-411). On March 7, 2012, the ALJ issued his decision, and found that Plaintiff was not disabled and denied her claim. (Tr. 368-81).

In his second decision, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. (Tr. 370). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 26, 2007, the alleged onset date. (Tr. 371). At step two, the ALJ determined that Plaintiff had the following severe impairments: "dependent lower extremity edema, venous insufficiency, neuropathy, leg pain, and an adjustment disorder." (Tr. 371). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 371). Next, the ALJ found that Plaintiff retained the residual functional capacity to

> perform light work as defined in 20 C.F.R. § 404.1567(b) except the [plaintiff] requires work that is low semi-skilled or unskilled with an SVP of 3 or below. The [plaintiff] can lift and carry 10 pounds frequently and 20 pounds occasionally. She can stand, walk, and sit for 6 hours. She should avoid frequent ascending and descending of stairs and pushing and pulling motions with her lower extremities. The [plaintiff] should avoid workplace hazards. The [plaintiff] is unable to climb, but can occasionally balance, stoop, crouch, kneel, and crawl. The [plaintiff] has moderate non-exertional mental limitations, which affect her ability to concentrate upon complex or detailed tasks, but remains capable of understanding, remembering, and carrying out simple job instructions (SVP 3 or below), making work-related judgments or decisions, and responding appropriately to supervision, coworkers, and wok situations, and dealing with changes in a routine work setting. The claimant should avoid stressful situations such as working with co-workers in a team and working directly (there may be some direct contact) with the public other than coworkers.

(Tr. 373).

At step four, the ALJ determined that Plaintiff was not capable of performing any of her past relevant work. (Tr. 379). The ALJ then continued to step five, where he relied on testimony from a VE, and ultimately concluded that based on Plaintiff's age, education, work experience, and RFC, that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 380). Thus, the ALJ found that Plaintiff had not been under a disability within the meaning of the Social Security Act from August 26, 2007, through the date of the decision. (Tr. 381). This appeal followed.

**II. Social Security Act Eligibility and Standard of Review**

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established,

and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) ("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'")

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

**III. Relevant Evidence and Arguments on Appeal**

Plaintiff was 37 years old on the alleged onset date. (Tr. 103). She has a high school education, and previously worked as a bus driver, bus aide, and child care worker. (Tr. 138, 141). She alleges disability beginning on August 26, 2007, because of swelling in her legs and feet. (Tr. 133, 137).

Here, Plaintiff argues that the ALJ erred by not finding her "diagnoses" of depression, lumbar degenerative disk disease (with both low back and radicular leg pain), neck pain, and diabetes to be severe impairments at step two, and by not considering those purported impairments in combination with her other impairments. (Doc. 16).

**IV. Analysis**

***A. Substantial Evidence Supports the ALJ's Finding at Step Two***

At step two, the ALJ must "consider the medical severity of [the plaintiff's] impairments." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)). In doing so, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the plaintiff's "physical or mental ability to do basic work skills." *Id.* This is a threshold inquiry: "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *See McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A diagnosis alone, however, is insufficient; instead, a plaintiff "must show the effect of the impairment on her ability to work." *See Wind*, 133 F. App'x at 690 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Here, Plaintiff contends that the ALJ erred at step two by failing to find her depression, lumbar degenerative disk disease, neck pain, and diabetes as severe impairments. For the reasons discussed below, the Court finds no error at step two. Moreover, even if the ALJ erred, that error would have been harmless because the ALJ did not stop his analysis at step two: "The finding of any severe impairment . . . is enough to satisfy step two because once the ALJ proceeds beyond step two he is required to consider the [plaintiff's] entire medical condition, including impairments the ALJ determined were not severe." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (finding that "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe[]"). Because the ALJ found several severe

impairments (namely, dependent lower extremity edema, venous insufficiency, neuropathy, leg pain, and an adjustment disorder) and then proceeded to step three, the ALJ's step two analysis was sufficient. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see also, Council v. Barnhart*, 127 F. App'x 473, No. 04-13128, slip op. at 4 (11th Cir. Dec. 28, 2004) (table) ("[T]he ALJ could not have committed any error at step two because he found that [the plaintiff] had a severe impairment . . . and moved on to the next step in the evaluation, which is all that is required at step two.").

Additionally, to the extent that Plaintiff argues that each "diagnosis" is a severe impairment, Plaintiff is mistaken. Indeed, in considering the medical evidence, a diagnosis in and of itself says nothing about the severity of the condition, s*ee, e.g., Ward v. Astrue*, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1998); *Hoehn v. Comm'r of Soc. Sec.*, 2011 WL 2470110, at *3 (M.D. Fla. June 21, 2011) (finding that "a mere diagnosis" is "insufficient to establish that an impairment is severe"), or of the ability of the plaintiff to work, *see, e.g., Walkden v. Comm'r of Soc. Sec.*, 2010 WL 4854268, at *4 (M.D. Fla. Nov. 22, 2010). The relevant question, rather, is whether the Court can conclude that the ALJ considered these conditions and whether they limited her ability to do work. Here, the ALJ considered each of Plaintiff's diagnoses (depression, lumbar degenerative disk disease, neck pain, and diabetes) throughout the sequential evaluation process, and Plaintiff has otherwise failed to show how these conditions caused limitations in addition to those accounted for by the RFC.[2]

[2] Notably, Plaintiff, without pointing to any records that the ALJ overlooked or otherwise failed to consider, contends that "the medical records clearly establish" that Plaintiff's depression, lumbar degenerative disk disease, neck pain, and diabetes are not slight abnormalities.

The ALJ considered Plaintiff's depression, and even found that Plaintiff's "adjustment disorder" was a *severe* impairment. (Tr. 371). As to the medical records, while Dr. Gary Honickman, who completed a psychological evaluation of Plaintiff, noted that she had "poor concentration," had "been depressed for eight or nine months," and diagnosed her with an "adjustment disorder with depressed mood" (Tr. 297, 375), Dr. Samer Choksi, who completed a consultative examination, noted that his diagnostic impression was that Plaintiff's depression was "treated" (Tr. 301, 376). Dr. Edmund Bartlett, who completed a psychiatric review technique, also noted that Plaintiff had an "adjustment disorder," though he reported that it was "not severe." (Tr. 302, 305, 371).

The ALJ considered these medical records and impairments, and even accounted for Plaintiff's adjustment disorder and mental limitations in his RFC analysis. Specifically, the ALJ determined that Plaintiff "has moderate non-exertional mental limitations, which affect her ability to concentrate upon complex or detailed tasks, but remains capable of understanding, remembering, and carrying out simple job instructions (SVP 3 or below), making work-related judgments or decisions, and responding appropriately to supervision, coworkers, and work situations, and dealing with changes in a routine work setting." (Tr. 373). In addition, the ALJ noted that Plaintiff "should avoid stressful situations such as working with coworkers in a team and working directly (there may be some indirect contact) with the public other than coworkers." (Tr. 373). Plaintiff does not point to any records that the ALJ overlooked, does not show that her depression is an impairment separate from her adjustment disorder, and does not advise the Court how "depression" caused Plaintiff greater restrictions than those that the ALJ accounted for in his RFC analysis.

The ALJ also considered the following medical evidence regarding Plaintiff's lumbar degenerative disk disease and neck pain, and, again, Plaintiff has failed to otherwise demonstrate how these diagnoses caused greater restrictions that those accounted for by the ALJ in limiting her to light work.

With regard to Plaintiff's spine, the ALJ noted that Dr. Choksi found that Plaintiff had a normal range of motion; that her motor, sensory, and reflexes were normal; that there were no muscle spasms; and that straight and seated leg raises were normal. (Tr. 301, 376). In addition, an MRI of Plaintiff's lumbar spine, dated December 11, 2007, revealed mild degenerative disc disease *without* evidence of disc herniation or extrusion and *no* pathologic central canal or neural foraminal stenosis. (Tr. 284, 377). And, with regard to this MRI, Dr. Reddy noted that it revealed "mild lumbar L5-S1 disk dessication and degenerative disk disease, which is *within normal limits* for her relative age." (Tr. 326) (emphasis added). Subsequently, on March 14, 2008, x-rays of Plaintiff's lumbar spine were normal and x-rays of her cervical spine revealed only mild degenerative changes. (Tr. 278-79). Additionally, as the ALJ observed, Plaintiff's January 15, 2010, cervical MRI "demonstrated relatively normal vertebral body height and alignment aside from straightening of normal cervical lordosis and what appeared to be a rotator curvature at the cervicothoracic junction;" and her lumbar MRI revealed some degenerative changes most pronounced at L5-S1, but little changes since the December 2007 MRI. (Tr. 353-56, 378-79).

Further, the ALJ considered records from Dr. Stephen Irwin who treated Plaintiff for her back and neck pain. Dr. Irwin's records show that he administered several epidural steroid injections and that Plaintiff had good results with this treatment. In October 2009, Dr. Irwin recommended a lumbar epidural steroid injection followed by physical therapy. (Tr. 359-62).

She underwent injections in January 2010 (Tr. 379, 493), and reported a 50% pain relief (Tr. 379, 494). Subsequently, in April 2010 (Tr. 495), she underwent another set of injections, and reported a 70% pain relief (Tr. 496). Moreover, nothing in Dr. Irwin's records establish that Plaintiff's back and neck pain prevented her from performing light work in accordance with the RFC.

Lastly, the medical evidence is devoid of any restrictions or limitations based on Plaintiff's diabetes, and Plaintiff has again pointed to *no* medical evidence that shows her diabetes caused restrictions or limitations that were not accounted for by the RFC. The medical evidence reflects that Dr. Prathima Reddy, Plaintiff's treating physician, encouraged her to exercise to help her *non-insulin dependent* diabetes. (Tr. 347). In addition, Dr. Juan Crespo, had prescribed Metformin for her polycystic ovary syndrome "as well as protection from diabetes." (Tr. 332, 379). In later records, Dr. Crespo noted that Plaintiff's "[d]iabetes has been well controlled." (Tr. 344, 379). With regard to Dr. Crespo's records, the ALJ noted that none of his records "set forth any exertional or non-exertional limitations that would substantially erode the light occupational base" provided for by the RFC. (Tr. 379). Thus, because the medical evidence does not show any additional restrictions or limitation stemming from Plaintiff's diabetes, she cannot show that it is a severe impairment.

In sum, it is Plaintiff's burden to prove that she has a severe physical or mental impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987) (finding that a plaintiff bears the burden "at step two that [s]he has a medically severe impairment or combination of impairments"). Here, Plaintiff has not met her burden, and substantial evidence supports the ALJ's findings at step two.

***B. The ALJ Properly Considered the Combined Effects of Plaintiff's Impairments***

The ALJ properly considered Plaintiff's impairments in combination as required by the Eleventh Circuit. Where a plaintiff alleges more than one impairment, the Commissioner has a duty to consider the cumulative effects of the impairments in making the determination as to whether the plaintiff is disabled. *Jones v. Dep't of Health & Hum. Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (citing *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985), *aff'd on other grounds*, *Sullivan v. Hudson*, 490 U.S. 877 (1989)).

Here, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of" any of the impairments listed in the regulations. (Tr. 371). In addition, the ALJ stated "[d]espite the [plaintiff's] impairments, the medical evidence does not document listing-level severity, and no acceptable medical sources has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (Tr. 371). And, in making his RFC finding, the ALJ noted that he "considered all symptoms." (Tr. 373). These statements by the ALJ are sufficient to demonstrate that he properly considered Plaintiff's impairments in combination. *See e.g.*, *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (holding that the ALJ's statement that he considered the plaintiff's impairments in combination was sufficient to show that the combined effect of the plaintiff's impairments had been considered); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (holding that the ALJ's statement that the plaintiff did not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations no. 4" constitutes evidence that the ALJ considered the combined effects of the plaintiff's impairments); *Jones*, 941 F.2d at 1533 (finding that the ALJ's statement that the plaintiff did not have "an impairment or combination of impairments listed in,

or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" was indicative of his proper consideration of the plaintiff's impairments in combination).

Furthermore, the ALJ's thorough discussion of the medical evidence, wherein he details Plaintiff's symptoms, conditions, and treatments (including discussions of the diagnoses that Plaintiff complains about here) also reflects the fact that he considered Plaintiff's impairments, as he stated he did, in combination. (Tr. 373-79). Thus, the Court finds no error in the ALJ's consideration of Plaintiff's impairments in combination.

**V. Recommendation**

Accordingly, for the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ's decision should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**IN CHAMBERS** in Ocala, Florida on June 20, 2013.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

The Honorable Kendall Sharp
Counsel of Record